## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 04 B 38599 |
| | ) | Chapter 7 |
| THOMAS A. MARCET, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ESTATE OF GEORGE SMITH, | ) | Adversary No. 05 A 00488 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS A. MARCET, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the amended complaint filed by Yvonne Torrez, Administrator of the Estate of George Smith (the "Plaintiff"), which seeks to except a debt allegedly owed by Thomas A. Marcet (the "Debtor") from discharge pursuant to 11 U.S.C. § 523(a)(4). For the reasons set forth herein, the Court grants judgment in favor of the Debtor and finds that the debt is discharged. The Court denies the Plaintiff's motion for directed findings under Federal Rule of Bankruptcy Procedure 7052.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

-2-

## II. FACTS AND BACKGROUND

The Debtor is the nephew by marriage of George Smith ("Smith"), who died on

March 30, 2002. The Debtor knew Smith for over twenty years and shared common interests

in hunting, target shooting, and woodworking. The Debtor is a certified public accountant.

He is not an attorney. The Debtor prepared Smith's and his wife's income tax returns for

twenty years prior to Smith's death. The Debtor would go to their house and prepare the

returns. According to the Debtor, Smith's tax returns were not complicated. The only

documents that Smith provided to the Debtor to prepare the returns were W-2 forms and

1099 statements. The Debtor did not become familiar with Smith's assets and the value

thereof by preparing the tax returns. However, he did learn of the existence of several

accounts owned by Smith because of the 1099 statements. During the twenty years that the

Debtor knew Smith, he never provided Smith with any financial advice, he did not control

Smith's finances, and he did not have knowledge of Smith's financial information except

what Smith provided to him to prepare the tax returns.

In October 2001, before Smith died, he placed the Debtor as a joint tenant on his

money market account number 1110026093477 at Bank One, N.A. (the "Account").

(Plaintiff Ex. No. 1; Debtor Ex. No. 3.) Both Smith and the Debtor signed the agreement that

established the joint tenancy for the Account. (*Id.*) In pertinent part, the joint tenancy

agreement on the signature card read as follows:

> We agree that any funds in our account(s) may be paid upon
> the request or order of any person signing this card whether
> the other or others be living or not. We intend to and do
> hereby create a joint tenancy with rights of survivorship.
> Each signer appoints each other signer to be his or her

> irrevocable attorney, to make deposits to this account(s), to endorse for cash or deposit any checks or other items whether payable to one of the signers alone or with others, and to receive and receipt for all or any funds all without obligation to the Bank to inquire into the source or application of funds....

(*Id.*) In October 2001, Smith had three other accounts at Bank One–a checking account and two certificates of deposit accounts. (Debtor Ex. Nos. 1, 2, & 4.) The Debtor was not a joint tenant or a signatory on any of these three accounts. (Debtor Ex. Nos. 2 & 4.) From October 2001, until his death on March 30, 2002, Smith continued to write checks on the Account.

It is undisputed that from the period December 7, 2001 through July 26, 2002, the Debtor issued checks drawn on the Account totaling $23,177.41 in order to pay Smith's monthly bills. In addition, from December 13, 2001 through April 4, 2002, the Debtor received or withdrew $170,931.45 from the Account. (Plaintiff Ex. Nos. 3-9, 11-16, & 17; Debtor Ex. No. 6.) Specifically, the following checks were issued or withdrawals were made from the Account during that period: (1) on December 13, 2001, Smith issued a check payable to the Debtor in the sum of $7,500.00; (2) on December 13, 2001, the Debtor withdrew $10,200.00; (3) on December 13, 2001, the Debtor withdrew the sum of $10,000.00; (4) on December 19, 2001, the Debtor withdrew $3,500.00; (5) on January 10, 2002, the Debtor withdrew $7,000.00; (6) on January 29, 2002, the Debtor withdrew $4,000.00; (7) on February 6, 2002, the Debtor withdrew $10,000.00; (8) on February 19, 2002, the Debtor withdrew $10,000.00; (9) on February 27, 2002, the Debtor withdrew $15,000.00; (10) on March 9, 2002, the Debtor withdrew $5,000.00; (11) on March 22, 2002, the Debtor withdrew $10,000.00; (12) on March 29, 2002, Smith issued a check payable to

-4-

the Debtor in the amount of $3,000.00; and (13) on April 4, 2002, the Debtor withdrew

$75,731.45. (*Id.*) This final withdrawal by the Debtor cleared out the Account. (Plaintiff

Ex. No. 17; Debtor Ex. No. 6.) The total sum of $170,931.45 was either withdrawn by the

Debtor or given to him by Smith and then deposited into the Debtor's personal bank account

at the Northern Trust Bank. (Plaintiff Ex. No. 18.) According to the Debtor, he used the

funds to pay his bills and Smith's bills. The monthly bank statements for the Account were

sent to Smith. The Debtor did not receive any of the monthly Account statements while

Smith was alive.

On December 1, 2001, at the suggestion of his sister Eileen, a nurse, the Debtor

prepared and Smith executed a general power of attorney that named the Debtor as attorney-

in-fact for Smith. (Plaintiff Ex. No. 2.) Subsequently, on February 10, 2002, again at

Eileen's suggestion, the Debtor prepared a Will for Smith from a form he obtained on the

internet. (Plaintiff Ex. No. 10.) The Will named the Debtor as executor. (*Id.*) In addition,

the Debtor was a witness to the document. (*Id.*) Pursuant to his Will, Smith bequeathed his

tools and matchbook collection to the Debtor. (*Id.*) Smith's real property and the residuary

of his estate was bequeathed to his surviving daughter, Yvonne Torrez, who is the Plaintiff

in this matter. (*Id.*)

The Plaintiff filed the instant adversary proceeding on February 7, 2005. An

amended complaint was filed on July 7, 2005. Therein, the Plaintiff alleges that the Debtor

committed defalcation while acting in the capacity of a fiduciary to Smith. Specifically, the

Plaintiff contends that the Debtor caused Smith to place the Debtor's name on his Account

at Bank One for the sole purpose of managing Smith's day-to-day financial affairs. As a

-5-

result, according to the Plaintiff, a technical trust was created with respect to the funds in the Account. Additionally, the Plaintiff maintains that when the Debtor drafted the power of attorney, which named the Debtor Smith's attorney-in-fact, a technical trust was created with respect to the funds in the Account. Moreover, the Plaintiff argues that when the Debtor drafted Smith's Will, he was acting in the capacity as Smith's attorney, and, thus, owed Smith a fiduciary duty. The Plaintiff asserts that the Debtor allegedly converted $170,937.45 from the joint Account. The Plaintiff alleges that the Debtor committed defalcation while acting in a fiduciary capacity when he converted the funds from the Account. Based on these allegations, the Plaintiff seeks to have the debt found to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). The Debtor denies that he was in a fiduciary relationship with Smith and denies that his actions are tantamount to defalcation.

A trial was held in this matter on June 9, 2006. The Debtor was the only witness who testified.[1] The Court finds that the Debtor was a credible witness. It is significant to note that the Plaintiff called no other witness to support her theories or views of this matter. The Plaintiff made a motion for directed findings under Federal Rule of Bankruptcy Procedure 7052, which incorporates by reference Federal Rule of Civil Procedure 52(c). The Court reserved ruling on the motion until the close of all of the evidence.

---

[1] The Court gave the Plaintiff and the Debtor the opportunity to submit their closing arguments in writing. Both parties filed written closing arguments and therein made reference to the transcript of the evidentiary hearing that was apparently transcribed by the certified shorthand reporter upon request of one or both of the parties. However, neither the Plaintiff nor the Debtor bothered to furnish a copy of that transcript to the Court.

-6-

### III. APPLICABLE STANDARDS

**A.    Exceptions to the Discharge of a Debt**

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. *See*

*Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to

establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed.*

*Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Banner*

*Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr. N.D. Ill. 1995). The United

States Supreme Court has held that the burden of proof required to establish an exception to

discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991);

*see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d 697,

700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against a creditor and

liberally in favor of a debtor. *Shaw Steel v. Morris*, 223 F.3d 548, 552 (7th Cir. 2000);

*Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998); *Goldberg Secs. v.*

*Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *In re Zarzynski*, 771 F.2d 304,

306 (7th Cir. 1985). "The statute is narrowly construed so as not to undermine the Code's

purpose of giving the honest but unfortunate debtor a fresh start." *Park Nat'l Bank & Trust*

*of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill. 2001).

**B.    11 U.S.C. § 523(a)(4)**

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the

dischargeability of debts. Section 523(a)(4) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–

-7-

> (4) for fraud or defalcation while acting in a
> fiduciary capacity, embezzlement, or
> larceny[.]

11 U.S.C. § 523(a)(4).

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for the Plaintiff to prevail under § 523(a)(4), she must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. *See* 11 U.S.C. § 523(a)(4). The complaint alleges non-dischargeability only on the basis of defalcation while acting in a fiduciary capacity. Thus, the Court will not discuss the fraud, embezzlement, or larceny grounds of tortious conduct proscribed under § 523(a)(4).

### 1. Express Trust or Fiduciary Relationship

A threshold inquiry is whether an express trust or fiduciary obligation ran from the Debtor to Smith under the facts of this matter. The existence of an express trust or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). An express or technical trust requires an explicit declaration of trust, a clearly defined trust *res*, and an intent to create a trust. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 358 (Bankr. N.D. Ill. 2004). Constructive, resulting, and implied trusts do not fall with the confines of §523(a)(4). *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994).

-8-

A § 523(a)(4) cause of action can be based on a fiduciary relationship other than one arising from an express trust. *Frain*, 230 F.3d at 1017; *Marchiando*, 13 F.3d at 1115-16. "A fiduciary relationship may arise separate from an express trust, . . . but it is the substance and character of the debt relationship that determines whether such a fiduciary relationship exists." *Monroe*, 304 B.R. at 358. The Seventh Circuit has found that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116; *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge. . . ."). For example, a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require the principal to "'repose a special confidence in the fiduciary.'" *Frain*, 230 F.3d at 1017 (*quoting Marchiando*, 13 F.3d at 1116).

However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*, 92 F.3d at 547. A fiduciary relation qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116. In other words, the fiduciary's obligation must exist prior to the alleged wrongdoing. *Id.*

### 2. Defalcation

"Defalcation" is not a defined term in the Bankruptcy Code. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (internal

-9-

quotation omitted); *see also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R.

331, 334 (Bankr. N.D. Ill. 1986) (same); *Murphy v. Slack*, No. 06 C 2091, 2006 WL

2583726, at *1 (N.D. Ill. Sept. 5, 2006) (*quoting* WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY UNABRIDGED 590 (1971)). An objective standard is used to determine a

defalcation, and intent or bad faith is not required. *Green v. Pawlinski (In re Pawlinski)*, 170

B.R. 380, 389 (Bankr. N.D. Ill. 1994). Mere negligence does not constitute defalcation.

*Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) (construing defalcation under §

523(a)(4) and § 523(a)(11)). That is, although the Seventh Circuit has not clearly defined

the level of tortious conduct necessary to constitute a defalcation in the context of §

523(a)(4), it has required something more than mere negligence or mistake, but less than

fraud. *Id.* at 1385; *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 656-57 (Bankr. N.D.

Ill. 1998). Some degree of culpability is required to make a debt nondischargeable as a

defalcation under § 523(a)(4), *see Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510,

511-12 (2d Cir. 1937), and a debtor's knowledge is relevant, *see Chase Lumber & Fuel Co.*

*v. Koch (In re Koch)*, 197 B.R. 654, 658-59 (Bankr. W.D. Wis. 1996). In sum, in order to

establish that a debt is nondischargeable for reason of defalcation while acting in a fiduciary

capacity, the Plaintiff must establish, by a preponderance of the evidence, the existence of

an express trust or a fiduciary relation and a debt caused by the Debtor's defalcation while

acting as a fiduciary. *See Grogan*, 498 U.S. at 291; *Woldman*, 92 F.3d at 547.

-10-

## IV. <u>DISCUSSION</u>

### A.   Express or Technical Trust

The Plaintiff maintains that a technical trust was created when Smith place the Debtor

on the Account as a joint tenant.  When a joint tenancy is created, an express or technical

trust is not created.  Rather, an express or technical trust is created when a party manifests

an intent to create such a trust, identifies the subject matter of the trust, identifies the nature

of the beneficiaries' interests, and describes the manner in which the trust is to be performed.

*Schaffer v. Dempster (In re Dempster)*, 182 B.R. 790, 802 (Bankr. N.D. Ill. 1995).  "Express

or technical trusts are formed by positive acts of both parties, typically manifested in writing

by a deed, will, or other such agreement."  *Id.*  The evidence before the Court failed to show

that an express or technical trust was created or intended.  There was no deed, will, or other

such agreement that manifested in writing an intent to create such a trust.  The joint tenancy

agreement did not contain any language establishing a declaration of trust, a clearly defined

trust *res*, or an intent to create a trust.  (Plaintiff Ex. No. 1; Debtor Ex. No. 3.)  The

agreement gave either joint tenant the right to use the entire funds, and upon either party's

death, the survivor was to receive all of the funds.  In sum, the Court rejects the Plaintiff's

argument that the creation of the joint tenancy Account gave rise to a technical trust.

### B.   Fiduciary Relationship

The Court must determine whether a fiduciary relationship existed between the

Debtor and Smith.  According to the Plaintiff, the Debtor was a fiduciary of Smith as a result

of his role as Smith's income tax preparer, his attorney-in-fact under the power of attorney,

and as executor of Smith's Will.  The Debtor, on the other hand, contends that when the joint

-11-

tenancy was created in the Account, no fiduciary relationship existed. Rather, the Debtor argues that as a result of the Account being held in joint tenancy, when he withdrew funds from the Account, he was not acting in a fiduciary capacity and such withdrawals did not constitute a defalcation.

**1.    Whether the Joint Tenancy Account Created a Fiduciary Relationship**

Initially, the Court will address the creation of the joint tenancy Account and whether the relationship between Smith and the Debtor as joint tenants gave rise to a fiduciary relationship for purposes of § 523(a)(4). The existence of a fiduciary relationship is tested under federal law standards. *Frain*, 230 F.3d at 1017; *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006). State law, however, is relevant to the inquiry. *Howard*, 339 B.R. at 919. Pursuant to common law, in a joint tenancy each party independently owns the entirety, and therefore, either party is entitled to withdraw the funds unilaterally. *Wood v. Jack Carl Assocs., Inc.*, No. 85 C 499, 1985 WL 1140, at *1 (N.D. Ill. April 29, 1985), *aff'd*, 782 F.2d 83 (7th Cir. 1986). When the sole owner of a bank account adds a joint tenant to the account, the law presumes that the original owner intends a gift. *In re Estate of Shea*, 848 N.E.2d 185, 190 (Ill. App. Ct. 2006). There is a presumption of donative intent when the proof shows that the execution of the joint tenancy account contract is in conformity with the statute. *Murgic v. Granite City Trust & Savs. Bank*, 202 N.E.2d 470, 472 (Ill. 1964); *In re Estate of Teall*, 768 N.E.2d 124, 129 (Ill. App. Ct. 2002). "The critical question is the intent of the alleged donor at the time the account was created, but subsequent events may be considered as bearing on the issue of intent." *In re Estate of Blom*, 600 N.E.2d 427, 429 (Ill. App. Ct. 1992) (citation omitted). The two main factors considered

Case 05-00488    Doc 98    Filed 09/26/06    Entered 09/26/06 14:49:42    Desc Main
Document      Page 12 of 21

in determining ownership of a joint account are the exercise of control over the account and

the contributions to the account. *In re Cloe*, 336 B.R. 762, 764 (Bankr. C.D. Ill. 2006)

(*citing Highsmith v. Dep't of Pub. Aid*, 803 N.E.2d 652, 657 (Ill. App. Ct. 2004)).

A party claiming adversely to the instrument creating the joint tenancy has the burden

of proving by clear and convincing evidence that a gift was not intended. *Murgic*, 202

N.E.2d at 472; *Teall*, 768 N.E.2d at 129. However, there is a presumption of fraud or undue

influence when there is a fiduciary relationship between the parties and the fiduciary has

benefitted because of his fiduciary status. *In re Estate of DeJarnette*, 677 N.E.2d 1024, 1029

(Ill. App. Ct. 1997).

Evidence establishing that a joint account was used as a "convenience account"

indicates a lack of donative intent and overcomes the presumption of a gift. *Shea*, 848

N.E.2d at 191; *Blom*, 600 N.E.2d at 429. A "convenience account" has been described as

follows:

> A "convenience account" is an account, apparently held in
> some form of joint tenancy, where in fact the creator did not
> intend the other tenant to have any interest, present or future,
> but had some other intent in creating the account.  An
> example of a convenience account is an account where the
> creator only wanted the other tenant to write checks at the
> creator's direction, and not to have any share in the account
> during the creator's life or on the creator's death.

*Teall*, 768 N.E.2d at 129 (*quoting In re Estate of Harms*, 603 N.E.2d 37, 41 (Ill. App. Ct.

1992)); *see also Shea*, 848 N.E.2d at 191 ("A convenience account is an account that is

nominally a joint account, but is intended to allow the nominal joint tenant to make

transactions only as specified by, and on behalf of, the account's creator.").

-13-

The Court finds that the joint Account was created in conformance with Illinois law.[2]
Thus, a presumption of donative intent on the part of Smith arises. The Plaintiff, as the party
claiming adversely to the instrument creating the joint Account, has the burden of proving
by clear and convincing evidence that a gift was not intended. On this point, the Plaintiff
argues that the circumstances surrounding the creation of the Account held in joint tenancy
by Smith and the Debtor lead to the conclusion that the Account was created as a
convenience account. Despite the Plaintiff's arguments, the Court rejects this conclusion as
unsupported by the evidence. There was simply no evidence to demonstrate that the Account
was a convenience account or that Smith lacked the presumed donative intent in creating the
joint tenancy Account.

The joint Account was established in October of 2001, prior to the creation of the
power of attorney and prior to the Debtor drafting Smith's Will. The power of attorney was
executed on December 1, 2001, by Smith. The transactions at issue occurred from the period
December 7, 2001 to April 4, 2002–the majority of which took place after the grant of the
power of attorney. The Court rejects the Plaintiff's argument that the Debtor was a fiduciary
of Smith at the time the joint Account was created, and, thus, the presumption of donative
intent gives way to a presumption of fraud and undue influence. As a joint tenant on the

---

[2] The basic form of interest in a joint account is a statutorily created form of joint
tenancy. *See* 765 ILL. COMP. STAT. 1005/2(a) (2004). This statute provides in relevant part
that "[w]hen a deposit in any bank or trust company . . . [is] made . . . in the names of 2 or
more persons payable to them when the account is opened or thereafter, the deposit or any
part thereof . . . may be paid to any one of those persons. . . ." *Id.* It is undisputed that Smith
and the Debtor signed the agreement that created the joint tenancy Account. Neither party
to this matter presented any evidence or argument that the execution of the joint tenancy
Account was not in conformance with Illinois law.

-14-

Account, the Debtor did not need to act under the power of attorney when he made withdrawals from the Account. Rather, the Debtor was entitled to withdraw the funds as a joint tenant. Indeed, there was no evidence adduced to show that the Debtor utilized his authority as Smith's attorney-in-fact. The Debtor did not withdraw funds from Smith's other accounts using the power of attorney. Moreover, as the Court noted *supra*, the mere fact that Smith placed the Debtor as a joint tenant on the Account did not create an express or technical trust.

Further, the Court finds that the Plaintiff failed to proffer any evidence that Smith intended the Account to be a convenience account. Smith received the monthly bank statements for the Account and there was no evidence set forth to show that Smith was unaware that the Debtor had been withdrawing money from the Account. Additionally, the Plaintiff failed to offer any evidence of Smith's intent at the time he created the Account that the Account was to be used by the Debtor solely for Smith's convenience. There was no evidence adduced at the trial to show that Smith wanted the Debtor to write checks strictly at his direction and the Debtor was not to share in the account during Smith's life or upon his death.

In sum, based on the lack of evidence, the Court is unable to find that the Account was created as a convenience account. The Court finds that the Plaintiff has failed to rebut by clear and convincing evidence the presumption that Smith intended to make a gift to the Debtor.

-15-

## 2.   Whether the Debtor's Role as Income Tax Advisor/Preparer Created a Fiduciary Relationship

Next, the Court must address whether a fiduciary relationship existed between the

Debtor and Smith based on the Debtor's role as Smith's income tax advisor and preparer.

The evidence was undisputed that for twenty years prior to Smith's death, the Debtor, a

certified public accountant, prepared Smith's income tax returns. Thus, it appears that Smith

and the Debtor had an accountant/tax advisor-client relationship. "Courts do not generally

regard the accountant-client relationship as a fiduciary one." *Resolution Trust Corp. v.*

*KPMG Peat Marwick*, 844 F.Supp. 431, 436 (N.D. Ill. 1994) (*quoting Mishkin v. Peat,*

*Mitchell & Co.*, 744 F. Supp. 531, 552 (S.D.N.Y. 1990) (internal quotation omitted)); *see*

*also Peterson v. H & R Block Tax Servs., Inc.*, 971 F.Supp. 1204, 1213 (N.D. Ill. 1997)

(finding that tax advisor's relationship with customer did not rise to the level of a fiduciary

relationship); *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,586

N.E.2d 600, 621 (Ill. App. Ct. 1991), *aff'd*, 636 N.E.2d 503 (Ill. 1994) (holding that no

fiduciary relationship existed between accounting firm and client).

The Court finds that the mere fact that the Debtor prepared Smith's tax returns for

many years does not ipso facto create a substantial inequality in power or knowledge between

them.   There was no evidence adduced at trial to show that the Debtor had a superior

knowledge of Smith's finances as result of having prepared his income tax returns. Indeed,

the Debtor testified he that never provided Smith with any financial advice, that he did not

control Smith's finances, and that he did not have complete knowledge of all of Smith's

financial portfolio, except for the information Smith provided to him to prepare the tax

-16-

returns. Thus, the Court rejects the Plaintiff's unsupported and uncorroborated argument that the Debtor's relationship with Smith as his income tax advisor/preparer created a fiduciary duty for purposes of § 523(a)(4).

**3.    Whether the Power of Attorney Created a Fiduciary Relationship**

Next, the Court must determine whether the Debtor's role as attorney-in-fact pursuant to the power of attorney created a fiduciary relationship between the Debtor and Smith. A power of attorney is a written instrument whereby the principal appoints the attorney-in-fact as agent and confers on the attorney-in-fact the authority to perform acts on behalf of the principal. *Artis v. West (In re West)*, 339 B.R. 557, 567 (Bankr. E.D.N.Y. 2006). Pursuant to Illinois law, a power of attorney creates a fiduciary relationship as a matter of law. *Boyce v. Fernandes*, 77 F.3d 946, 950 (7th Cir. 1996); *Apple v. Apple*, 95 N.E.2d 334, 338 (Ill. 1950); *In re Estate of Miller*, 778 N.E.2d 262, 266 (Ill. App. Ct. 2002); *Lexington Health Care Ctr. of Elmhurst v. McDade (In re McDade)*, 282 B.R. 650, 659-60 (Bankr. N.D. Ill. 2002) (*citing* Illinois cases). Accordingly, once the power of attorney was executed, the Debtor was responsible as a fiduciary to Smith. *See In re Estate of Savage*, 631 N.E.2d 797, 799 (Ill. App. Ct. 1994). This Illinois rule, however, is not outcome determinative under § 523(a)(4).

The general fiduciary duty created by a power of attorney does not necessarily give rise to the fiduciary capacity required by § 523(a)(4). *West*, 339 B.R. at 567; *Valley Mem'l Homes v. Hrabik (In re Hrabik)*, 330 B.R. 765, 773 (Bankr. D. N.D. 2005); *Bast v. Johnson (In re Johnson)*, 174 B.R. 537, 541 (Bankr. W.D. Mo. 1994). Rather, the power of attorney gives rise to an agency relationship. *Id.* However, if a debtor has an elevated level of

-17-

fiduciary duty, such a relationship could give rise to the requisite fiduciary capacity required

by § 523(a)(4). *Id.* According to the Seventh Circuit, in order to be a fiduciary for purposes

of § 523(a)(4), there must be "a difference in knowledge or power between fiduciary and

principal which . . . gives the former a position of ascendancy over the latter." *Marchiando*,

13 F.3d at 1116.

The Court is not persuaded by the Plaintiff's arguments or cited but distinguishable

case law that the presumption of donative intent arising upon the creation of the joint tenancy

Account is negated by the subsequent drafting and execution of the power of attorney and

the presumption of fraud arising from the exercise of the power of attorney in favor of the

Debtor. This is because there was absolutely no evidence in the record to show that the

Debtor exercised the power of attorney with regard to any of Smith's property, especially

with respect to the Account proceeds.

The Court finds that there was no evidence proffered at trial to show that Smith was

not capable of monitoring the Debtor's behavior. Moreover, the record is devoid of any

evidence that the Debtor was in a true position of ascendancy over Smith or controlling him.

Smith was writing checks from the Account payable to the Debtor and was aware that the

Debtor was making withdrawals from the Account. Indeed, during his remaining lifetime,

Smith was receiving the monthly bank statements for the Account, not the Debtor. There

was no evidence adduced to show that Smith had a diminished mental capacity, that he was

unaware of or incapable of understanding the Debtor's actions with respect to the Account,

or that he raised any questions or objections to the Debtor's withdrawals from the Account.

-18-

In addition, the Court finds that the Debtor was not in control of any of Smith's other assets and did not gain a position of ascendancy over Smith as a result of the power of attorney. The Debtor testified that he did not gain any knowledge of Smith's asset portfolio other than the information that was provided to him with respect to his preparation of Smith's income tax returns. Furthermore, there was no evidence to show that the Debtor took any actions with regard to any of Smith's property as his attorney-in-fact pursuant to the power of attorney. He did not withdraw funds from any of Smith's other accounts. Thus, the Court finds that the Plaintiff failed to set forth any convincing evidence to demonstrate that there was substantial inequality in power or knowledge between the Debtor and Smith. Accordingly, the Court holds that under § 523(a)(4) and the *Marchiando* case, the power of attorney by itself fails to establish the requisite fiduciary relationship between the Debtor as fiduciary and Smith as principal/beneficiary.

Assuming arguendo that the power of attorney created a fiduciary relationship for § 523(a)(4) purposes, the Court finds that the Debtor was a pre-existing joint tenant on the Account before the fiduciary relationship began. Thus, as a joint tenant, he was entitled to withdraw all of the funds from the Account. The Debtor did not withdraw the funds under the authority of the power of attorney. Rather, he made those withdrawals as a joint tenant. "[W]here a joint tenant has the right to withdraw money unilaterally from a joint bank account, a court will not deem the joint tenant's exercise of that right as wrongful, unauthorized, improper, or unlawful." *In re Estate of Vogel*, 684 N.E.2d 1035, 1040 (Ill. App. Ct. 1997). Moreover, the joint tenancy on the Account was not terminated, severed, or negated by the subsequent execution of the power of attorney.

-19-

### 4. Whether the Debtor's Preparation of Smith's Will and His Being Named as Executor of the Will Gave Rise to a Fiduciary Relationship

Next, the Court must decide whether the Debtor's preparation of Smith's Will and his being named as executor of the Will created a fiduciary relationship. It is undisputed that the Debtor was not an attorney. The mere fact that the Debtor, a non-attorney, printed a form from the internet and assisted Smith in drafting his Will did not make the Debtor a fiduciary of Smith for purposes of § 523(a)(4). The Debtor did not assume the role of executor of Smith's Will until after Smith died on March 30, 2002. Thus, Smith's fiduciary duty as executor of the Will did not arise until after Smith's death. The majority of the withdrawals from the Account were made prior to that date. In fact, only one withdrawal in the sum of $74,731.45 was made by the Debtor after Smith's death. That withdrawal was made by the Debtor on April 4, 2002, as the surviving joint tenant on the Account, not in the Debtor's capacity of executor of Smith's Will.

In conclusion, the Court finds that the Plaintiff has not shown by a preponderance of the evidence that a fiduciary relationship existed between the Debtor and Smith for purposes of § 523(a)(4) as a result of the Debtor's role as Smith's income tax preparer, his attorney-in-fact pursuant to the power of attorney, and as the preparer of and being named as the executor of Smith's Will.

### C. Defalcation

Next, the Plaintiff must establish, by a preponderance of the evidence, that the debt was caused by the Debtor's defalcation while acing as a fiduciary. The Plaintiff argues that the Debtor's withdrawal of funds from the Account and the depositing of those funds into

-20-

his personal account constituted a defalcation. The Court found *supra* that the Plaintiff failed to establish an express or technical trust and the existence of a fiduciary relationship between the Debtor and Smith. Moreover, the Court finds that the Creditor failed to show that the Debtor's actions in withdrawing the funds from the Account constituted defalcation. The Court noted *supra* that as a joint tenant on the Account, the Debtor was within his right at all times to make withdrawals from that Account. Consequently, the Debtor's withdrawal of those funds do not constitute misappropriation of trust funds coupled with a failure to account for such funds. Thus, the Plaintiff has not proven by a preponderance of the evidence that the Debtor defalcated while acting in a fiduciary capacity with respect to the funds in the Account.

## V. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's motion for directed findings. The Court grants judgment in favor of the Debtor and finds that the debt is discharged.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____9/26/6_____

_____
John H. Squires
United States Bankruptcy Judge

cc:   See attached Service List

## SERVICE LIST

### Estate of George Smith v. Thomas Marcet
**Adversary No.  05 A 00488**

Elizabeth A. Bates, Esq.
Huck Bouma PC
1755 S. Naperville Road
Suite 200
Wheaton, IL 60187

Lester A. Ottenheimer, III, Esq.
Ottenheimer Teplinsky Rosenbloom,
LLC
750 Lake Cook Road, Suite 140
Buffalo Grove, IL 60089

Brenda Porter Helms, Esq.
c/o Albany Bank & Trust
3400 W. Lawrence Avenue
Chicago, IL 60625

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

AO 72A
(Rev. 8/82)